**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------

**DIANE and ROGER PESKIN, and MAUREEN EBEL,**

            **Appellants,**

    - against -

**IRVING H. PICARD, as Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,**

            **Appellee.**

**09 Civ. 8730 (JGK)**

**MEMORANDUM OPINION AND ORDER**

-----------------------------------

**JOHN G. KOELTL, District Judge:**

    The plaintiff-appellants, Diane and Roger Peskin and Maureen Ebel, appeal from an order of the United States Bankruptcy Court for the Southern District of New York (Lifland, J.) dated September 10, 2009, granting the defendant-appellee's motion to dismiss their complaint. The appellants were customers of Bernard L. Madoff Investment Securities, LLC ("BLMIS"). The appellee is the trustee for the substantively consolidated Securities Investor Protection Act ("SIPA") liquidation of BLMIS and Bernard L. Madoff ("Madoff").

I.

A.

On December 11, 2008, Madoff was arrested and criminally charged with a multi-billion-dollar securities fraud scheme in the United States District Court for the Southern District of New York (the "District Court"). On the same date, the Securities and Exchange Commission ("SEC") filed a complaint against Madoff and BLMIS in the District Court. On December 15, 2008, under section 78eee(a)(4)(A) of SIPA, 15 U.S.C. § 78eee(a)(4)(A), the SEC consented to a combination of the SEC action with an application filed by the Securities Investor Protection Corporation ("SIPC"), alleging that BLMIS was not able to meet its obligations to securities customers as they came due. On the same date, the District Court entered an order placing BLMIS in liquidation under SIPA, appointing the appellee as trustee, and removing the liquidation proceeding to the bankruptcy court.

On December 23, 2008, the bankruptcy court entered an order (the "Claims Procedures Order") specifying the procedures for the filing, determination, and adjudication of claims by BLMIS customers for relief under section 78fff-2(a)(2) of SIPA, 15 U.S.C. § 78fff-2(a)(2). Under the Claims Procedures Order, all

claims against BLMIS must be filed with the trustee, who then determines customer claims in writing. (Claims Procedures Order at 3, 6.) A claimant may object to the trustee's determination, and upon such objection, the bankruptcy court will hear the matter. (Claims Procedures Order at 6-7.)

**B.**

SIPA was enacted with the goals of preventing brokerage house failures, restoring investor confidence in capital markets, and upgrading the financial responsibility requirements for registered brokers and dealers. See Secs. Investor Prot. Corp. v. Barbour, 421 U.S. 412, 415 (1975) (internal citations omitted). With SIPA, Congress created SIPC, a nonprofit corporation designed to provide financial protection to the customers of member broker-dealers in the event that such a broker-dealer failed. SIPA created a new, bankruptcy-like liquidation proceeding applicable to SIPC member firms and designed to accomplish the expeditious return of customer property.

In a SIPA liquidation proceeding, customers share pro rata in customer property to the extent of their "net equity," as defined in section 78lll(11) of SIPA, 15 U.S.C. § 78lll(11). SIPC advances funds to the trustee for a customer with a valid

net equity claim, up to the lesser of the amount of the customer's claim or $500,000.

In proceedings in the bankruptcy court, the trustee took the position that a customer's "net equity" is the aggregate amount invested by the customer less the aggregate amount of any withdrawals by and distributions to the customer from the account.  Under the trustee's definition of net equity, therefore, customers would not be entitled to recover any fictitious profits reflected in their BLMIS account statements.  At the request of the trustee, after the appellants and others objected to this calculation, the bankruptcy court held a hearing on the propriety of the trustee's position.  On March 1, 2010, the bankruptcy court rendered a decision adopting the trustee's definition of net equity.  That decision was certified for immediate appeal to the Second Circuit Court of Appeals, pursuant to 28 U.S.C. § 158(d)(2).  Oral argument on the issue was heard in that court on September 15, 2010.

C.

On February 17, 2009, plaintiff-appellant Maureen Ebel filed a claim with the trustee for the amount of her deposit, $1,348,844.12, and various securities, in connection with an Individual Retirement Account (the "IRA account").  (Pet'r's

4

App. Ex. L; Greenblatt Decl. Ex. A.)  She also filed a claim for the amount of her deposits, less withdrawals, and various securities, in connection with another account in her name.  On May 20, 2009, the trustee issued a determination letter with respect to the first claim, allowing the claim to the extent of her deposit, but otherwise denying it.  (Greenblatt Decl. Ex. B.)  The trustee advised Ebel that she would be paid $500,000 from funds advanced by SIPC, and that the remainder of her claim would be a claim against the fund of customer property.  (Greenblatt Decl. Ex. B.)  Ebel provided the trustee with a Partial Release and Assignment, dated May 27, 2009, which provided that her claim would be released "only to the extent that the SIPA trustee and/or SIPC has paid monies to [her] to satisfy [her] Customer Claim."  (Greenblatt Decl. ¶ 15.)  Ebel received $500,000 from the trustee.

On May 22, 2009, the trustee issued a determination notice to Ebel with respect to her second claim.  The trustee allowed the claim for the amount of her deposits less withdrawals, $2,290,387.49, denied the rest of the claim, and advised her that her claim would be satisfied in part from funds provided by SIPC.  (Greenblatt Decl. Ex. D.)  The trustee advised Ebel, however, that because she had received a "preferential transfer" of $102,000 from BLMIS in the 90 days preceding the commencement of the bankruptcy case, that amount would be deducted from the

5

$500,000 otherwise owed to her.  (Greenblatt Decl. Ex. D.)  On June 9, 2009, the trustee issued a revised determination letter to Ebel.  (Greenblatt Decl. ¶ 22 & Ex. E.)  On August 5, 2009, the trustee issued a partial release and assignment, which Ebel executed on August 8, 2009.  (Resp't's Counterstmt. Exs. 5, 6.)  This release also provided that Ebel's claim would be released "only to the extent that the SIPA trustee and/or SIPC has paid monies to [her] to satisfy [her] Customer Claim."  (Resp't's Counterstmt. Ex. 6 at 3.)  Additionally, the accompanying determination letter made explicit that "[b]y executing the Partial Assignment and Release, [Ebel would] not be waiving any rights to the full payment of the SIPC protection potentially available to [her]."  According to the trustee, Ebel has now been paid $500,000 out of funds advanced by SIPC with respect to her second claim, with no deduction to reflect the alleged $102,000 preferential transfer.

 On February 23, 2009, appellants Diane and Roger Peskin filed a claim with the trustee in connection with an account held in their names, seeking securities they valued at $3,247,367.40.  (Greenblatt Decl. Ex. F.)  They submitted a second claim on June 29, 2009, in connection with the same account, claiming securities they valued at $470,265.98.  (Greenblatt Decl. Ex. G.)  On July 16, 2009, the trustee issued a notice of determination advising the Peskins that their claims

6

had been combined into one claim for the purposes of the decision, and informing them that their combined claim would be allowed in the amount of $2,310,191.25 — the amount they deposited with BLMIS for the purchase of securities, less subsequent withdrawals. (Greenblatt Decl. Ex. H.) The trustee denied the remainder of the Peskins' claim and advised them that, upon their execution of a partial release and assignment, they would be paid $500,000 out of funds advanced by SIPC, and the balance of their claim would continue to be asserted against the fund of customer property. The Peskins executed such a release, and were paid $500,000 by the trustee. (Greenblatt Decl. Ex. H.)

### D.

The appellants filed a complaint against the trustee on June 10, 2009. They sought a declaratory judgment that: (1) the trustee's method for computing "net equity" was erroneous because it was not based on the amounts reflected on the final account statements the appellants had received from BLMIS; (2) the trustee and SIPC were obligated to pay promptly the appellants' claims up to $500,000, based upon those statements; (3) the trustee had no right to assert preference claims against the appellants; and (4) the trustee had obtained a partial

release of Ebel's claim based on her IRA account through duress, and the release was thus void.  Pet'r's App. Ex. J.  The appellants also asserted a damages claim for breach of fiduciary duty based on their allegations.

The trustee moved to dismiss the Complaint on the grounds that the plaintiff-appellants had failed to state a claim upon which relief could be granted and that the bankruptcy court lacked subject matter jurisdiction over the appellants' claims.  SIPC filed a memorandum in support of the trustee's motion.  The bankruptcy court held a hearing on the issues and, on September 10, 2009, entered a memorandum opinion and order granting the trustee's motion to dismiss (the "Bankruptcy Order").

In the order, the bankruptcy court found that the bulk of the Complaint was tantamount to an objection to the appellants' claim determinations, and thus constituted an impermissible attempt to circumvent the Claims Procedure Order.  Bankr. Order at 10-11.  The court ruled that the appellants were required to adhere to the procedures set forth in that order "because (i) the Order plainly applies to Plaintiffs' claim . . . ; (ii) the Order does not harm Plaintiffs as it provides for the same relief, if warranted, as that sought in the Complaint; and (iii) Plaintiffs' failure to follow the procedures is fundamentally unfair to other objecting customers and allowing such conduct to

proceed would wreak havoc on the claims adjudication process." Id. at 10.

The court ruled that the appellants' request for a declaration that the trustee was not entitled to bring preference actions against them was not ripe, because the Peskins had not received a preferential transfer and Ebel had received the full $500,000 SIPA advance, despite the trustee's contention that she had received a preferential transfer. Id. at 15. The court found that the declaration sought by the appellants with respect to the partial release by Ebel failed as a matter of law, because SIPA permitted the trustee to seek such a release. Id. at 16 n.20.

Finally, the bankruptcy court dismissed without prejudice the appellants' breach of fiduciary duty claims as premature. Id. at 16. It found that the appellants' claim based on the trustee's position on the net equity issue was not ripe because it hinged on the resolution of the underlying dispute about the proper interpretation of "net equity." Id. It dismissed the claim based on the trustee's failure to "promptly" pay SIPC advances on similar grounds. Id. at 15-16.

The plaintiffs appealed to this court.

**II.**

In general, a district court reviews a bankruptcy court's factual findings for clear error and its legal conclusions de novo. In re Bell, 225 F.3d 203, 209 (2d Cir. 2000); In re BDC 56 LLC, 330 F.3d 111, 119 (2d Cir. 2003), abrogated on other grounds by In re Zarnel, Nos. 07-0090-bk(L), 07-0091-bk(con), 07-0092-bk(con), 07-0097-bk(con), 07-0098-bk(con), 07-0099-bk(con), 2010 WL 3341428, at *9-11 (2d Cir. Aug. 26, 2010); Fed. R. Bankr. P. 8013.  A bankruptcy court's decision not to exercise jurisdiction over a declaratory judgment action, however, is reviewed for abuse of discretion.  See, Wilton v. Seven Falls Co., 515 U.S. 277, 289-90 (1995); Dow Jones & Co. v. Harrods Ltd., 346 F.3d 357, 359 (2d Cir. 2003) (per curiam).  A ruling is an abuse of discretion only if the bankruptcy court "bases its ruling on a mistaken application of the law or a clearly erroneous finding of fact."  Duane Reade, Inc. v. St. Paul Fire and Marine Ins. Co., 411 F.3d 384, 388 (2d Cir. 2005) (internal quotation marks omitted).

**A.**

The bankruptcy court ruled that the appellants' effort to obtain a declaration that the trustee's definition of "net

10

equity" was incorrect was precluded by the Claims Procedure Order.  That ruling was not an abuse of discretion.

The bankruptcy court's Claims Procedure Order established a thorough procedure for the resolution of claims against BLMIS.  Under the order, the appropriate method for the appellants to obtain relief is to file an objection to the trustee's determination of their claims.  The appellants have instead filed an adversary proceeding against the trustee.  The bankruptcy court found that this attempt to circumvent the Claims Procedure Order, if permitted, would be "fundamentally unfair" to other objecting customers, Bankr. Order at 11, and that it would furthermore be detrimental to the BLMIS bankruptcy estate, because it would disrupt the claims review and adjudication process, divert resources, and encourage "a chaotic race to the courthouse." Id. at 12.

As the bankruptcy court noted, there is no reason that the appellants should not be required to adhere to the same claims adjudication process as all other customers.  Their basic contention — that the trustee has adopted an improper definition of "net equity" — is common to most, if not all, BLMIS customers.  Furthermore, that issue has now been decided (in a manner adverse to the appellants) by the bankruptcy court, and is now pending on appeal to the Second Circuit Court of Appeals.  In light of this procedural posture, allowing the appellants to

11

attack the trustee's actions in an adversary proceeding would be a misuse of the trustee's — and the bankruptcy court's — time and resources.  For the same reasons, it was not an abuse of discretion for the bankruptcy court to dismiss the appellants' claims for declaratory relief based on the trustee's alleged delay in making payments on claims.  That delay was based on the need to calculate net equity positions and to have that issue litigated in an orderly process in the bankruptcy court.

**B.**

The bankruptcy court also declined to exercise jurisdiction over the appellants' request for a declaration that the trustee was not entitled to assert preference actions against them, finding that that request was not ripe.  This ruling was not an abuse of discretion.

The Article III "case or controversy" requirement applies to all actions in federal court, including those under the Declaratory Judgment Act.  28 U.S.C. § 2201(a); see also Associated Indem. Corp. v. Fairchild Indus., Inc., 961 F.2d 32, 35 (2d Cir. 1992).  "[T]he question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the

12

issuance of a declaratory judgment." Golden v. Zwickler, 394 U.S. 103, 108 (1969) (internal quotation marks omitted).

Although there is a potential dispute between Ebel and the trustee with respect to the alleged preferential transfer of $102,000, that issue appears to have been resolved for the time being by the trustee's payment to Ebel of the full $500,000 advance available under SIPA. The trustee has not sought the return of any of the $500,000 paid to Ebel, has not brought an adversary proceeding against her, and has no pending preferential transfer claim against her. As the trustee argues, the statute that allows the recovery of preferential transfers, 11 U.S.C. § 547, may never be applied against Ebel. The remaining appellants concede that the trustee has not sought to assert preference claims against them. They merely seek a declaration that the trustee could never bring a preference action against them. Thus, as to all of the appellants, there is only a hypothetical dispute that is not sufficiently "immedia[te]" and "real[]" to warrant an award of declaratory relief.

Kidder, Peabody & Co., relied upon by appellants, is not to the contrary. In that case, the plaintiff sought a declaration that it was not liable to the defendants under federal securities laws. See Kidder, Peabody & Co., Inc. v. Maxus Energy Corp., 925 F.2d 556 (2d Cir. 1991). The plaintiff did so

13

after receiving a memorandum from the defendants that detailed the claims and defenses that the defendants might assert, including a claim under the federal securities laws.  Under those circumstances, the court held that a "declaratory judgment action . . . was properly commenced in light of the real threat of litigation."  Id. at 562 (emphasis added).  Under the circumstances of that case, the threat of litigation was real and immediate; accordingly, the court, exercising its discretion, found it insufficient for the defendants to aver that they would not pursue the securities claims.

In this case, on the other hand, the trustee acknowledges that the Peskins never received a preferential transfer.  As for Ebel, the trustee is not only not pursuing a preference action against her, but has actually paid out the full $500,000 allowed by SIPA on each account.  To the extent a dispute arises in the future, it should be decided in accordance with the claims scheduling process of the bankruptcy court or in a separate adversary proceeding.  (Bankr. Order at 15.)  In light of these facts, it cannot be said that the bankruptcy court abused its discretion in declining to issue a declaration on the preference issue.

C.

Next, the appellants claim that the bankruptcy court erred by denying their request for a declaration that the partial assignment and release executed by Ebel with respect to her IRA account was void because it was obtained by the trustee through duress.  The bankruptcy court's decision on this claim was not an abuse of discretion.

Section 78fff-2(b) of SIPA states that "[a]ny payment or delivery of property pursuant to this subsection may be conditioned upon the trustee requiring claimants to execute . . . . releases . . . and assignments . . . ."  In the normal course, upon the allowance of a valid customer claim and prior to "any payment or delivery of property," the trustee may require the customer to sign a partial assignment and release, to the extent of the payment to be made.

Ebel signed such a release in connection with her receipt of funds from the trustee in connection with her IRA account.  The release provided that Ebel was relinquishing her claim "to the extent that the SIPA Trustee and/or SIPC has paid monies to [her] to satisfy [her claims]."  Resp't's Counterstmt. Ex. 6 at 3.)  The appellants argue that SIPA "does not require that a customer waive a portion of her claim in order to receive any SIPC advance."  Pet'r's Mem. 29.  However, section 78fff-2(b)

15

clearly contemplates some such releases. At the very least, the trustee must be permitted to require a claimant to waive her claim to the extent of an advance she receives on account of the claim. This is exactly what happened in Ebel's case.[1] Accordingly, the bankruptcy court did not abuse its discretion in declining to entertain the appellants' claim for a declaration that the trustee "extracted" a waiver from Ebel by duress.

**D.**

Finally, the bankruptcy court dismissed without prejudice the appellants' claims for damages based on alleged breaches of the trustee's fiduciary duties, on the ground that they were premature. This decision, too, was proper.

---

[1] It bears noting that the determination letters issued to Ebel both indicated that her claim would be allowed only to the extent of her initial deposit, without any adjustment for fictitious profits. However, nothing in either release Ebel signed would prevent her from seeking a redetermination of the amount of her remaining claim, were the trustee's interpretation of "net equity" to be rejected. Indeed, Ebel has acknowledged that her objection to the trustee's determination of "net equity" has been preserved. (Pet'r's Mem. at 30.)
Additionally, the appellants argue that the trustee was not entitled to seek a release with respect to Ebel's IRA account in light of the protections afforded such accounts under ERISA. Pet'r's Mem. 29-30. However, the trustee made it clear at argument that Ebel had not released any claim under ERISA and Ebel made it clear that she was no longer pursuing this argument in the current proceeding. (Tr. 6:3-7:5, 9:14-10:4.)

The alleged breaches consisted of the same conduct that formed the basis of the appellants' request for declaratory relief: the trustee's improper determination of net equity and his delay in disbursing funds.

The appellants' claim based on the trustee's allegedly improper interpretation of "net equity" cannot succeed if it is determined that the trustee's interpretation was correct. Thus, before the appellants' claim can proceed, the net equity issue must be finally addressed. Accordingly, it was not error for the bankruptcy court to refuse to entertain the appellants' claim while the net equity issue was pending before it.

For the same reason, the appellants' claim for damages based on an allegation of undue delay was properly dismissed as premature. The alleged undue delay consisted of time the trustee spent attempting to ascertain the correct definition of net equity, and then determining each customer's net equity based on the definition he adopted. Accordingly, resolution of this issue would be premature prior to a finding that the trustee's definition of "net equity" was in fact incorrect.[2]

---

[2]  It is unnecessary to reach SIPC's argument, which is not advanced by the trustee, that the filing of this Complaint violated the stay imposed by the District Court Order, dated December 15, 2008, which placed BLMIS in liquidation and removed the liquidation proceedings to the bankruptcy court. Under SIPA section 78eee(b)(2)(B)(i), the District Court ordered "any other suit against any trustee of the Defendant . . . is stayed." The Bankruptcy Court found it unnecessary to reach this argument in

**III.**

For the foregoing reasons, the decision of the bankruptcy court is **affirmed**.

**SO ORDERED.**

**Dated:**  **New York, New York**
         **October 25, 2010**                 _____
                                                    **John G. Koeltl**
                                              **United States District Judge**

---

view of the dismissal of the Complaint.  Bankr. Order at 10 n.10.

III.

For the foregoing reasons, the decision of the bankruptcy court is **affirmed**.

SO ORDERED.

Dated:  New York, New York
        October 23, 2010

                                        _____
                                              John G. Koeltl
                                        United States District Judge

---

view of the dismissal of the Complaint.  Bankr. Order at 10 n.10.